

2006 FEB 15 PM 12: 11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| | ) | |
| Plaintiff, | ) | **3:06CR0719** |
| | ) | |
| v. | ) | VIOLATIONS: **JUDGE CARR** |
| | ) | 18 U.S.C. § 956(a) |
| | ) | 18 U.S.C. § 2339A, |
| MOHAMMAD ZAKI AMAWI, | ) | 18 U.S.C. § 842(p)(2)(A), and |
| MARWAN OTHMAN EL-HINDI, and | ) | 18 U.S.C. § 871 |
| WASSIM I. MAZLOUM, | ) | |
| | ) | |
| Defendants. | ) | |

## COUNT 1

The Grand Jury charges that:

1. At all times material to this Indictment, MOHAMMAD ZAKI AMAWI

(AMAWI) was a citizen of Jordan as well as a citizen of the United States, residing, until August

2005, in Toledo, Ohio. AMAWI traveled to Jordan in October 2003, and returned to the United

States in March 2004. While in Jordan, AMAWI unsuccessfully attempted to enter into Iraq to

wage violent jihad, or "holy war," against the United States and coalition forces. AMAWI

returned to Jordan in August 2005.

- 2 -

2.     At all times material to this Indictment, MARWAN OTHMAN EL-HINDI (EL-HINDI) was a naturalized United States citizen born in Amman, Jordan, and residing in Toledo, Ohio.

3.     At all times material to this Indictment, WASSIM I. MAZLOUM (MAZLOUM) was a United States person, (i.e., legal permanent resident), who entered the United States in 2000 from Lebanon.  MAZLOUM resided in Toledo, Ohio, with his brother, and operated a car business there.

4.     At all times material to this Indictment, "the Trainer" was a United States citizen, not named as a conspirator herein, whose identity is known to the Grand Jury.  The Trainer has a U.S. military background and, in 2002, was solicited by EL-HINDI to assist in providing security and bodyguard training.

<u>The Conspiracy</u>

5.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 4 of this Indictment.

6.     From at least as early as November 2004, and continuing to the date of this Indictment, in the Northern District of Ohio, Western Division, and elsewhere, defendants MOHAMMAD ZAKI AMAWI, MARWAN OTHMAN EL-HINDI, and WASSIM I. MAZLOUM, together with others known and unknown to the Grand Jury, did willfully combine, conspire, confederate and agree to kill or maim persons in locations outside of the United States, to include U.S. armed forces personnel serving in Iraq.

- 3 -

## Manner and Means

7. It was a part of the conspiracy that one or more conspirators would recruit others to train for violent jihad against the United States and its allies in Iraq, and elsewhere, and would propose potential training sites for use in providing ongoing firearms, hand-to-hand combat, explosives, and other paramilitary training to prospective recruits.

8. It was a further part of the conspiracy that one or more conspirators would research and solicit potential funding sources for the jihad training. Such potential funding sources included government grants, from which funds would be diverted for training purposes, as well as private sponsors.

9. It was a further part of the conspiracy that the conspirators would gather and view training materials, including those found on secure and exclusive web sites, and download and copy training videos and materials for use in jihad training sessions. Such training materials included videos on the production and use of improvised explosive devices (IEDs), and suicide bomb vests, among others.

10. It was a further part of the conspiracy that the conspirators would travel together to a shooting range for firearms training and practice.

## Overt Acts

11. In furtherance of the conspiracy, and to effect the illegal objects thereof, one or more of the conspirators knowingly performed one or more overt acts, in the Northern District of Ohio, Western Division, and elsewhere within the United States, including, but not limited to the following:

- 4 -

12.    On or about November 17, 2004, AMAWI and MAZLOUM met with the Trainer to discuss and plan the violent jihad training.

13.    On or about November 23, 2004, EL-HINDI solicited the Trainer to travel with him to the Middle East in connection with the establishment of a training facility which would include, among other things, firearms training. EL-HINDI advised the Trainer that he was in contact with individuals there who were in the process of putting together such a facility.

14.    On or about November 23, 2004, AMAWI and the Trainer engaged in an instructional session on the construction and use of IEDs and timing devices. AMAWI stated in part and in substance that his aim was to target U.S. military assets.

15.    On or about January 10, 2005, AMAWI showed the Trainer a video that demonstrated how to make explosives. AMAWI and the Trainer discussed different types of explosives, including nitroglycerine. AMAWI advised the Trainer that the video explained that many of the explosives have a strong smell.

16.    On or about January 21, 2005, AMAWI, the Trainer, and others, practiced target shooting at an indoor shooting range in Toledo, Ohio.

17.    On or about January 27, 2005, AMAWI communicated, by computer, with an individual in the Middle East. From the communication, AMAWI learned that some "brothers" were preparing to cross the border into Iraq.

18.    On or about January 31, 2005, AMAWI gave the Trainer a computer disk on which AMAWI had downloaded a video on the construction of a suicide bomb vest, entitled "Martyrdom Operation Vest Preparation," for use in the jihad training. AMAWI instructed the

- 5 -

Trainer to download the materials from the disk onto the Trainer's personal computer and then return the disk to AMAWI.

19.     On or about February 2, 2005, AMAWI, EL-HINDI, and the Trainer discussed the use of plastic explosives.

20.     On or about February 6, 2005, AMAWI described a plan to covertly smuggle a firearm into a Middle Eastern country by covering the weapon with a particular material in a carry-on bag to disguise and conceal it from x-ray detection at the airport, and solicited the Trainer's opinion regarding the plan's feasibility.

21.     On or about February 8, 2005, EL-HINDI viewed a suicide bomb vest video from a jihadist web site. EL-HINDI proposed to the Trainer that the jihad training materials be downloaded onto disks and shown to two of EL-HINDI's training recruits in Chicago.

22.     On or about February 16, 2005, AMAWI, EL-HINDI, MAZLOUM and the Trainer met at EL-HINDI's residence to coordinate the jihad training exercises. The group made plans to conceal their training activities.

23.     On or about February 16, 2005, MAZLOUM offered to provide some funding for training supplies and materials.

24.     On or about February 16, 2005, AMAWI, EL-HINDI, and MAZLOUM debated what the Iraqi insurgency needed most: money, weapons, or manpower. They also discussed the effectiveness of snipers against the U.S. military.

25.     On or about February 16, 2005, MAZLOUM stated, in part and in substance, that he wanted to learn how to build small IEDs from household items, and explained that he could use his business, buying and selling automobiles, as a cover for traveling in and out of Iraq.

- 6 -

26.     On or about February 18, 2005, EL-HINDI assisted the Trainer in registering for access to a secure jihadist web site on EL-HINDI's computer. They then registered the Trainer for a "Basic Training" course offered through the web site, which promised basic weapons training and physical training, among other topics. EL-HINDI indicated that he would like to register himself for the course. According to the site information, the "Basic Training" course was a pre-requisite for the "Advanced Training" course also being offered. Through the secure web site, EL-HINDI and the Trainer also accessed links for, among other things, jihad training videos.

27.     On or about February 25, 2005, EL-HINDI electronically forwarded to the Trainer an e-mail communication EL-HINDI had received from an unspecified source which contained a series of photographs and a narrative of an ambush of apparent United States military vehicles and personnel, and displaying the detonation of IEDs.

28.     On or about April 4, 2005, EL-HINDI met with an accountant in Dearborn, Michigan, to begin the process of creating a new non-profit organization that would be used to receive grant funds, under the guise of providing tax education services. EL-HINDI suggested that "nominee" names should be used for the incorporators of the organization.

29.     On or about April 6, 2005, AMAWI asked to meet with the Trainer in person later that day, in lieu of communicating over the telephone. At that face-to-face meeting, AMAWI, in part and in substance, asked the Trainer if he had a source or contact overseas who could obtain a certain chemical explosive on behalf of a "brother" in the Middle East. AMAWI advised the Trainer that he had been communicating with his "brother" in the Middle East over the internet,

- 7 -

using various code words to disguise and conceal the true subject and purpose of their communications.

30.     On or about April 7, 2005, AMAWI gave the Trainer a paper napkin on which AMAWI had written a word representing the name of the requested chemical explosive.

31.     On or about April 11, 2005, AMAWI sent a coded e-mail to his contact in the Middle East regarding the "pillows," (the code word for the chemical explosive) inquiring how much was needed, in what form it was needed, i.e. "hard" (solid), or "soft" (liquid), and to where overseas it should be delivered.

32.     On or about April 13, 2005, AMAWI communicated with a contact in the Middle East, by computer, regarding the chemical explosive. AMAWI discussed the delivery of the chemical explosive, and admonished his contact for being too open in the communications.

33.     On or about April 13, 2005, AMAWI and MAZLOUM participated in weapons training including the sight alignment of a handgun. AMAWI and MAZLOUM expressed an interest in instruction regarding explosives, including IEDs. AMAWI and MAZLOUM agreed to obtain false identification documents as part of their operational security plan.

34.     During the training exercise, on or about April 13, 2005, AMAWI practiced training others what he had learned by repeating the instruction to MAZLOUM in Arabic.

35.     On or about April 20, 2005, AMAWI and MAZLOUM received additional instruction from the Trainer. AMAWI, MAZLOUM and the Trainer discussed obtaining army fatigues to place on dummies for staging attacks, and AMAWI and MAZLOUM each suggested where the group might acquire the uniforms. AMAWI and the Trainer also discussed videotaping future outdoor training exercises, covering their faces to protect their identities.

- 8 -

MAZLOUM requested that the Trainer expedite the training, and advised that he was
commencing physical fitness training.

36.    On or about April 20, 2005, AMAWI and MAZLOUM practiced target shooting
at an indoor shooting range, under the Trainer's supervision.

37.    On or about April 29, 2005, AMAWI, MAZLOUM, and another individual
practiced target shooting at an indoor range. AMAWI paid for the rental of two shooting lanes,
and the rental of two handguns, a Beretta 9 mm pistol and a Glock 40 caliber pistol. AMAWI,
MAZLOUM, the Trainer, and the other individual discussed the importance of keeping their
training secret.

38.    On or about April 29, 2005, the Trainer discussed with AMAWI and MAZLOUM
that they train with real explosives during the upcoming Fourth of July holiday, when the sounds
of the explosions would not raise undue suspicion.

39.    On or about May 18, 2005, AMAWI requested to be trained to use a mortar.

40.    On or about June 20, 2005, AMAWI telephoned the Trainer and, during the
conversation, renewed the earlier suggestion that they train in the use of IEDs during the Fourth
of July holiday because the holiday fireworks explosions would disguise their activities.

41.    On or about August 22, 2005, AMAWI and the Trainer boarded Royal Jordanian
flight number 268 from Detroit, Michigan to Amman, Jordan. They took with them five laptop
computers, which AMAWI intended to deliver to the mujahideen "brothers."

All in violation of Title 18, United States Code, Section 956(a)(1).

- 9 -

## COUNT 2

The Grand Jury further charges that:

42. The allegations of paragraphs 1 through 4, inclusive, of Count One of this Indictment are realleged and incorporated as if fully set forth herein.

43. From in or about November 2004, until the date of this indictment, in the Northern District of Ohio, Western Division, and elsewhere, defendants MOHAMMAD ZAKI AMAWI (AMAWI), MARWAN OTHMAN EL-HINDI (EL-HINDI), and WASSIM I. MAZLOUM (MAZLOUM), did conspire, confederate and agree with others known and unknown to the Grand Jury to provide material support and resources, knowing and intending they were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 2332 (killing of U.S. nationals).

### Manner and Means

44. It was a part of the conspiracy that AMAWI would and did communicate with co-conspirators, including a co-conspirator in the Middle East, whose identity is partially known to the Grand Jury, using "code words" to disguise and conceal the true subject and purpose of the communications.

45. It was a further part of the conspiracy that the defendants would attempt to identify, locate, and provide various resources and materials requested by the co-conspirators overseas for use in waging jihad against the United States military and coalition forces in Iraq, and elsewhere. Such resources and materials included money, training, explosives, communications equipment, computers or personnel, including the defendants, themselves.

- 10 -

## Overt Acts

46.    The allegations of paragraphs 12 through 41 of Count One of this Indictment are realleged and incorporated as if fully set forth herein.

47.    On or about August 22, 2005, upon arrival at the Amman, Jordan airport, AMAWI produced a letter for Jordanian officials, written by his employer at the travel agency in Toledo, Ohio, claiming that the computers were to be used by the travel agency to facilitate the "United States Diversity Immigrant Visa Program," in which the travel agency was participating. AMAWI and the Trainer were permitted to retain possession of the laptop computers and transport them into Jordan.

48.    On or about August 24, 2005, AMAWI communicated with an individual, whose identity is unknown to the Grand Jury, for the purpose of arranging to turn over the laptop computers to the mujahideen.

All in violation of Title 18, United States Code, Section 2339A.

## COUNT 3

The Grand Jury further charges that:

49.    The allegations of paragraphs 1 , 4 and 18 of Count One of this Indictment are realleged and incorporated as if fully set forth herein.

50.    On or about January 31, 2005, in the Northern District of Ohio, Western Division, the defendant, MOHAMMAD ZAKI AMAWI, did knowingly distribute information pertaining to, in whole or in part, the manufacture and use of an explosive or destructive device, with the intent that the information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence, in that the defendant downloaded onto a computer disk, from a secure

- 11 -

mujahideen web site, instructional materials and videos, including a video entitled "Martyrdom

Operation Vest Preparation," which depicted the step-by-step construction and use of a suicide

bomb vest, an "explosive" as defined in Title 18, United States Code, Section 844(I), and a

"destructive device" as defined in Title 18, United States Code, Section 921(a)(4), and

distributed the computer disk to one or more other persons, including but not limited to the

Trainer, intending that the instructional materials on the disk be used for training individuals in

the construction and use of such bomb vests to commit and further a Federal crime of violence,

as defined in Title 18, United States Code, Section 16, including but not limited to the killing of

a national of the United States outside of the United States, a violation of Title 18, United States

Code, Section 2332(a), and the killing of any officer or employee of the United States, a violation

of Title 18, United States Code, Section 1114.

In violation of Title 18, United States Code, Section 842(p)(2)(A).

## COUNT 4

The Grand Jury further charges that:

51.     On or about October 14, 2004, in the Northern District of Ohio, Western Division,

the defendant, MOHAMMAD ZAKI AMAWI, knowingly and willfully did verbally threaten to

kill or to inflict bodily harm upon the President of the United States, to and in the presence of

another person.

In violation of Title 18, United States Code, Section 871.

- 12 -

<u>COUNT 5</u>

The Grand Jury further charges that:

52.     On or about March 15, 2005, in the Northern District of Ohio, Western Division,

the defendant, MOHAMMAD ZAKI AMAWI, knowingly and willfully did verbally threaten the

President of the United States, to and in the presence of another person.

In violation of Title 18, United States Code, Section 871.

A TRUE BILL.

Original document – Signatures on file with the Clerk of Courts, pursuant to the
E-Government Act of 2002.